IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD A. HARLEY, MICHAEL F. O'CONNOR, ROBERT J. BATORY, SHIRLEY A. DWYER and JOHN HOLMES, in their capacity as members of THE RETIREMENT PLANS COMMITTEE, as Plan Administrator for the WELLSPAN HEALTH SYSTEM PENSION PLAN,**<br><br>**Plaintiffs**<br><br>v.<br><br>**THE BANK OF NEW YORK MELLON,**<br><br>**Defendant** | Civ. No. 1:15-CV-1384<br><br><br><br><br><br><br><br><br><br><br><br>**Judge Sylvia H. Rambo** |

# **M E M O R A N D U M**

In this ERISA breach of fiduciary duty action, Defendant has moved to transfer venue to the District Court for the Southern District of New York pursuant to a forum selection clause contained in a master trust agreement governing Defendant's direction of assets in a pension plan. Because the court finds that the forum selection clause is valid and applies to the current dispute, Defendant's motion to transfer venue will be granted.

**I.     Background**

   **A.     Facts**

The WellSpan Health System Pension Plan (the "Plan") is an "employee pension benefit plan" governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(2)(A), that provides pension benefits to employees of

WellSpan Health ("WellSpan") and its various subsidiaries. (Doc. 1, ¶ 1.) The Bank of New York Mellon ("Defendant") is an investment company acting as a trust and custody services provider for the Plan through a Master Trust Agreement (the "Agreement") (Doc. 5-1) between itself WellSpan, and is responsible for processing investment allocation and reallocation directions regarding the Plan's assets. (*Id*. at ¶¶ 2, 6, 8, 10.)

Pursuant to the terms of the Agreement and the regular practices of the parties, WellSpan would provide wire instructions to Defendant for allocation or reallocation of funds with various investment managers. (*Id*. at ¶ 11.) In instances where WellSpan did not provide specific wire instructions, Defendant would either process the wire transfer based on prior transactions with that particular investment manager, or request specific instructions from WellSpan. (*Id*. at ¶¶ 11-13.)

On July 15, 2013, WellSpan made a $29 million contribution to the Plan. (*Id*. at ¶ 14.) On July 24, 2013, WellSpan sent two letters via facsimile to Defendant to request two investment allocations: a $14 million transfer from the "Cashflow" account to an investment manager called Artisan Partners to invest, and a $15 million transfer from the "Cashflow" account to an investment manager called LSV Asset Management to invest in the LSV International Fund. (*Id*. at ¶ 15.) Both letters invited Defendant to call WellSpan with any questions regarding specific wiring instructions for the two transfers. (*Id*. at ¶¶ 16-17.) Defendant did not follow up with any questions regarding the transfer to the LSV International Fund, instead confirming in a "call-back" with WellSpan that the funds would

be transferred as requested. (*Id*. at ¶¶ 18, 20.) Despite this confirmation, Defendant transferred the $15 million not to the LSV International Fund as discussed, but to another cash account, without providing notice to WellSpan of the change. (*Id*. at ¶ 21-22.)

WellSpan did not discover that the $15 million had not been transferred to the LSV International Fund until October 21, 2013. (*Id*. at ¶ 22.) Plaintiffs allege that, had the transfer been made as requested on July 24, 2013, the investment would have provided significant returns. (*Id*. at ¶ 23.) Plaintiffs claim that Defendant's failure to promptly transfer the funds to the appropriate account and the resulting financial loss constituted a breach of the fiduciary duties Defendant owed to the Plan. (*Id*. at ¶¶ 26-29.)

### B. Procedural History

Plaintiffs, in their individual capacities as members of the Retirement Plans Committee (the "Committee"), which acts as the plan administrator, instituted this action by filing a complaint on July 15, 2015. (Doc. 1.) On September 15, 2015, Defendant filed a motion to transfer venue to the Southern District of New York pursuant to a forum selection clause in the Agreement. (*See* Doc. 5.) Defendant also filed its brief in support of the motion to transfer that same day. (Doc. 6.)

Plaintiffs filed their opposition on October 2, 2015, arguing that while the forum selection clause was valid, it did not apply to the instant dispute because the forum selection clause is narrowly tailored and only applicable to disputes that "arise under" the Agreement, and Plaintiffs' claims arise under ERISA. (*See* Doc. 17.) Defendant filed its reply on

October 19, 2015. (Doc. 19.) Thus, the motion has been fully briefed and is ripe for disposition.

**II.      Legal Standard**

Defendant has moved for a transfer of venue from the Middle District of Pennsylvania to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), relying on a forum selection clause in the Agreement with WellSpan as the basis for the transfer. Oridinarily, in response to a § 1404(a) motion, a district court must "weigh the relevant private and public-interest factors and determine whether a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Spy Phone Labs LLC v. Google, Inc.*, Civ. No. 14-cv-6565, 2015 WL 4773159, *2 (D.N.J. Aug. 13, 2015) (quoting 28 U.S.C. § 1404(a)); *see also Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995). When, however, the parties have agreed to a valid forum selection clause, the court must change its "usual § 1404(a) analysis in three ways." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, ___U.S. ___, 134 S. Ct. 568, 581 (2013). "First, the weight ordinarily given to the Plaintiffs choice of venue—that is, the forum in which it filed the civil action—disappears and 'the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.'" *ARK Builders Corp. v. Minersville Area Sch. Dist.*, Civ. No. 14-cv-1551, 2015 WL 6121758, *1 (M.D. Pa. Oct. 15, 2015) (quoting *Atl. Marine*, 134 S. Ct. at 581). Second, the court must

deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 134 S. Ct. at 582. Third, when a party "flouts" its contractual obligation under a forum selection clause, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules – a factor that in some circumstances may affect public-interest considerations ." *Id*. (citation omitted). However, because public-interest factors alone "will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id*.; *see also Untitled 3, LLC v. Apex Energy Group, LLC*, Civ. No. 15-cv-0164, 2015 WL 2169770, *3 (W.D. Pa. May 8, 2015) (stating that a motion to transfer pursuant to a valid forum selection clause should be granted "in all but the most exceptional cases.").

**III.** **Discussion**

    **A.** **Applicability of the Forum Selection Clause to Plaintiffs' Breach of Fiduciary Duty Claim**

Here, Plaintiffs do not challenge the forum selection clause's validity, but instead argue that their breach of fiduciary duty claim does not fall within the clause's scope. "The question of the scope of a forum selection clause is one of contract interpretation." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.,* 119 F.3d 1070, 1073 (3d Cir. 1997). Thus, "whether or not a forum selection clause applies depends on what the *specific clause at issue* says." *Id*. at 1075. Here, the forum selection clause found in the Agreement states:

5

> Except as otherwise required by [ERISA], all proceedings under this Agreement shall be brought in courts located in the City of New York and [WellSpan] hereby submits to the jurisdiction of such courts for such purposes and hereby waives the right to a trial by jury in any action or proceeding related to this Agreement.

(Doc. 5-1, § 16.)  In determining the scope of this forum selection clause, comparing it to forum selection clauses from "other cases is useful only to the extent those other cases address contract language that is the same or substantially similar to that at issue." *John Wyeth & Bro.*, 119 F.3d at 1075.  Plaintiffs argue that the language "proceedings under this Agreement" is a narrow forum selection clause – unlike broad clauses that include phrases such as "relate to" or "in connection with" – and that it only applies to the two types of proceedings specifically mentioned in the Agreement, namely, "proceeding[s] for [a] judicial settlement" of accounts and proceedings to appoint a successor trustee.  (Doc. 17, pp. 18-19 of 22.)  In so arguing, Plaintiffs contend that the provision at issue here is narrower than similar clauses that include proceedings or disputes that "arise under" an agreement.  (*Id.*)  The court disagrees.

      The pertinent language in the forum selection clause is "all proceedings under this Agreement," as it goes without saying that a proceeding will need a verb to come into being.  Therefore, whether the proceeding arises, originates, or is created or formed, the relevant inquiry is whether it has done so "under the agreement."  Accordingly, the court finds that the instant forum selection clause is equivalent to forum selection clauses containing the language "arising under" or "arising from," and will look to how courts have

interpreted the scope of those clauses in order to determine whether Plaintiffs' breach of fiduciary duty claim is within the scope of the forum selection clause here.

Courts addressing this contractual language have found that "[a] claim 'arises from' a contract where it can be said 'to originate from' the contract." *Spy Phone Labs*, 2015 WL 4773159 at *3 (quoting *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 390 (2d Cir. 2007)). This meaning is typically "interpreted as indicating a causal connection." *Health Robotics, LLC v. Bennett*, Civ. No. 09-cv-0627, 2009 WL 1708067, *3 (E.D. Pa. June 16, 2009) (quoting *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001)). As such, the use of language such as "'arising hereunder,' 'arising under,' and 'arising out of'" is intended only to cover disputes "relating to the interpretation and performance of the contract itself." *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011) (citations omitted). However, a plaintiff cannot circumvent a valid forum selection clause by pleading a non-contractual theory of relief if its claim "arise[s] out of the contractual relation and implicate[s] the contract's terms." *Crescent Int'l, Inc. v. Avatar Cmtys., Inc.*, 857 F.2d 943, 944 (3d Cir. 1988) (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983)).

Here, Plaintiffs argue that their breach of fiduciary duty claim arises under ERISA, rather than the Agreement, because it is ERISA that defines the fiduciary duty owed by Defendant, and the Agreement merely "provide[s] *background* about the parties' relationship." (Doc. 17, pp. 20-21 of 22.) The court disagrees. As a threshold matter, the

7

scope of the fiduciary duty articulated in ERISA is based on the common law of trusts. *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1299 (3d Cir. 1993). In applying the common law of trusts, several courts in other circuits have construed the terms of the underlying trust agreement and other related documents to determine the scope of any fiduciary duty owed by a trustee. *See, e.g., Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998) (finding that, under the relevant agreements, trustee did not have discretion over the actions that formed the basis of the breach of fiduciary duty claim)); *Maniace v. Commerce Bank of Kansas City, N.A.*, 40 F.3d 264, 267 (8th Cir. 1994) (relying on trust document to determine the scope of fiduciary duty owed); *Kling v. Fid. Mgmt. Trust Co.*, 270 F. Supp. 2d 121, 128 (D. Mass. 2003) (finding that trust agreement was ―central to [plaintiff's] claim because . . . ERISA's provisions relating to fiduciary duty make explicit and repeated reference to plan documents.") (citing ERISA §§ 402, 403, 29 U.S.C. §§ 1102, 1103); *Justice v. Bankers Trust Co., Inc.*, 607 F. Supp. 527, 533 (N.D. Ala. 1985) (―As a general matter, the duties imposed on a fiduciary by ERISA are limited to those related to the particular functions which that fiduciary is authorized to perform under the plan and applicable trust agreements or other controlling documents.") (citing *Brandt v. Grounds*, 687 F.2d 895 (7th Cir. 1982)).

   Where the terms of an agreement governing the relationship between the parties are relevant in determining the scope of the fiduciary duty owed, several courts have found that a breach of fiduciary duty claim arises under or from the agreement. *See Abbey v.*

*Skokos*, 303 F. App'x 911, 913 (2d Cir. 2008) (finding that because the conduct at issue "was accomplished through the [relevant] agreement, [plaintiff's] allegations of securities fraud in connection with that transaction 'arise[]' from the agreement and therefore the forum selection clause applies.") (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993)); *Presbyterian Healthcare Servs. v. Goldman, Sachs & Co.*, Civ. No. 14-cv-0181, 2015 WL 4993571, *40 (D.N.M. Aug. 14, 2015) (finding that "non-contract claims like breach of fiduciary duty . . . fall within the forum-selection clause's reach" where the forum selection clause covered "all actions and proceedings arising under" the agreement) (citing *Abbott Labs. v. Takeda Pharm. Co. Ltd.*, 476 F.3d 421, 424 (7th Cir. 2007)); *Absolute Activist Master Value Fund, Ltd. v. Ficeto,* Civ. No. 09-cv-8862, 2013 WL 1286170, *18 (S.D.N.Y. Mar. 28, 2013) ("When forum selection clauses contain 'relating to' or 'arising under' language, courts are inclined to interpret those clauses broadly to cover disputes beyond those for breach of contract," including claims for breach of fiduciary duty) (citing *Coregis Ins.*, 241 F.3d at 128); *Advent Elecs., Inc. v. Samsung Semiconductor, Inc.*, 709 F. Supp. 843, 846 (N.D. Ill., E. Div. 1989) (finding forum selection clause governing all litigation under the agreement applicable to breach of fiduciary duty claim where "[t]he fiduciary duty which [plaintiff] seeks to enforce . . . arises from its relationship with [defendant]. The [relevant agreement] defines the nature of that relationship and [defendant]'s attendant responsibilities, and resolution of the claim hinges on an

9

interpretation of the Agreement" and ―an assessment of [defendant's] rights and duties under the Agreement.").

Here, as in the cases cited above, the court finds that the fiduciary duties owed to Plaintiffs by Defendant arise under the Agreement. The Agreement forms the basis of the relationship between Plaintiffs and Defendant, and provides the scope of Defendant's powers in relation to Plan assets, instructions for Defendant when receiving requests for allocation or reallocation of Plan assets, and limitations to Defendant's liability for certain conduct. (*See* Doc. 5-1, §§ 2.2(b), 3, and 8.) Because Plaintiffs' claim for breach of fiduciary duty revolves around whether Defendant properly followed instructions related to two requests for reallocation of Plan assets, the resolution of Plaintiffs' claim will undoubtedly include an interpretation of the sections of the Agreement related to the powers, instructions on performance, and limitations of liability conferred upon Defendant by the Agreement to determine if Defendant breached its fiduciary duties to Plaintiffs. *See Cape Flattery*, 647 F.3d at 922. Accordingly, the court finds that Plaintiffs' claim arises out of the contractual relationship between the parties, and a causal connection exists between the Agreement and Plaintiffs' claim. *See Kling*, 270 F. Supp. at 128; *see also Crescent Int'l*, 857 F.2d at 944 (citing *Coastal Steel*, 709 F.2d at 203); *Health Robotics*, 2009 WL 1708067, *3 (citing *Coregis Ins.*, 241 F.3d at 128). Therefore, Plaintiffs' claim for breach of fiduciary duty falls within the scope of the forum selection clause contained in the Agreement.

B. **Enforceability of the Forum Selection Clause**

The parties do not dispute the validity of the forum selection clause in the Agreement, and as stated above, the court finds that the clause applies to Plaintiffs' claim for breach of fiduciary duty. Where a valid forum selection clause applies, the court "may consider arguments about public-interest factors only" in determining whether to enforce the clause and transfer venue under 28 U.S.C. § 1404(a). *Atl. Marine*, 134 S. Ct. at 582 (internal citation omitted). "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id*. The Third Circuit has articulated the public-interest factors for the court's consideration, which include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879-80 (internal citations omitted). Here, as the party attempting to defeat a valid forum selection clause, Plaintiffs "bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine*, 134 S. Ct. at 583. Therefore, the court will examine each of the public-interest factors in turn to determine if Plaintiffs have met their heavy burden.

1. **Enforceability of the Judgment**

Plaintiffs concede in their brief in opposition to Defendant's motion to transfer that judgment enforceability is not an issue in the instant matter, and make no argument that

11

a judgment entered by the District Court for the Southern District of New York would be unenforceable. (Doc. 17, p. 12 of 22.) Therefore, the court finds that this factor does not weigh against transfer.

### 2. Practical Considerations that Could Make the Trial Easy, Expeditious, or Inexpensive

Plaintiffs argue that the second factor weighs against transfer because the location of witnesses and relevant evidence makes Harrisburg, Pennsylvania "a far less difficult, far more expeditious, and far less expensive venue than New York City." (*Id*.) Defendant counters that this factor does not weigh against transfer because the witnesses and relevant evidence have yet to be identified, and Plaintiffs have been represented by their current counsel in several recent actions in the Southern District of New York. (Doc. 19, p. 10 of 12.) Plaintiffs' rote recitation of the factor itself with no explanation of the witnesses or evidence expected to be relied upon to support their argument does little to persuade the court, and, accordingly, the court finds that this factor does not disfavor transfer.

### 3. Court Congestion

Plaintiffs next argue that congestion in the Southern District of New York weighs against transfer, because as of March 2013, that court had nearly six times the number of civil cases as this court. (Doc. 17, p. 13 of 22.) While the Southern District of New York undoubtedly has more civil cases than this court, Plaintiffs fail to mention that the Southern District of New York also has nearly five times the number of judges and three times the number of magistrate judges as this court. (Doc. 19, p. 10 of 12.) In fact, Plaintiffs

12

themselves point out that the average amount of time to dispose of cases in the Southern District of New York is 8.3 months, and here in the Middle District the average is 7.7 months. (Doc. 17, p. 13 of 22.) The fact that the average length of a civil case in the two courts only differs by approximately two weeks belies Plaintiffs' argument that court congestion would disfavor transfer.

### 4. Local Interest

Next, Plaintiffs argue that local interests "weigh *heavily against* a transfer" because the ERISA claim seeks relief for a Pennsylvania health system's pension plan that is administered within the Middle District for the benefit of employees who work and reside within the Middle District, and because Defendant's conduct that gave rise to Plaintiffs' claim occurred exclusively in Pennsylvania. (*Id*.) Defendant's only argument as to New York's interest is that Defendant's primary place of business is in New York. (Doc. 6, p. 9 of 10.) Accordingly, the court finds that the local interests weigh against transfer.

### 5. Public Policy of the Forum

The parties agree that this factor is neutral. Indeed, because employee benefits are matters of federal concern, ERISA preempts state law. Therefore, no public policies of either New York or Pennsylvania are implicated. *See* 29 U.S.C. § 1144; *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 200 (2004).

### 6. Familiarity with Applicable State Law

Finally, Plaintiffs argue that this factor is irrelevant because ERISA preempts state law and this court would be just as capable of applying federal law as the Southern District of New York. (Doc. 17, p. 14 of 22.) Defendants counter that the Agreement contains a choice-of-law provision selecting New York law, which will become relevant to the extent a court needs to interpret the terms of the Agreement to determine whether Defendant breached its fiduciary duties to Plaintiffs. (Doc. 19, p. 12 of 12.) The court agrees with Defendant. As stated *supra*, section III.A, several portions of the Agreement bear on Plaintiffs' breach of fiduciary duty claim. Accordingly, the court finds that this factor weighs in favor of transfer.

Based on the consideration of the above factors, the court finds that public interest does not overwhelmingly weigh against transfer. Only one of the factors – local interest – disfavors transfer, and the remaining factors are either neutral or favor transfer. Accordingly, Plaintiffs have not met their burden of showing that the instant case is one of the unusual or exceptional cases where the public-interest factors would defeat a valid and applicable forum selection clause. *See MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65. F. App'x 844, 847-48 (3d Cir. 2003) (stating that valid forum selection clauses are entitled to ―controlling weight in all but the most exceptional case[s].").

**IV.     Conclusion**

For the reasons stated herein, the court finds that Plaintiffs' breach of fiduciary duty claim under ERISA constitutes a "proceeding under this Agreement" pursuant to the Agreement's indisputably valid forum selection clause, and Plaintiffs did not establish that the public-interest factors so overwhelmingly disfavor transfer to the Southern District of New York as to overcome the parties' binding agreement as to the proper forum for disputes arising under the Agreement. Accordingly, the court will grant Defendant's motion to transfer.

An appropriate order will issue.

                                                                         s/Sylvia H. Rambo
                                                                         United States District Judge

Dated: November 10, 2015